IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

                                    Case No. 5:20-cr-28-MW/MJF

v.

MARGO DEAL ANDERSON, et al.,

        Defendants.
_____/

**DEFENDANT ANDERSON'S**
**<u>MOTION TO DISMISS COUNTS</u>**

Defendant, Margo Deal Anderson, moves to dismiss Counts 2 through 7, 9 through 14, 15, 17, 21 and 25 in the Second Superseding Indictment pursuant to Federal Rule of Criminal Procedure 12, and says:

**I.   WORLDCLAIM**

<u>Honest Services Wire Fraud</u>

The wire transmission charged for Count 21 did not further the charged scheme to defraud.

A wire transmission in furtherance of the charged scheme to defraud is an essential element of honest services wire fraud.  A wire transmission is "in furtherance of" a scheme if the wire transmission is "incident to an essential part of the scheme" or a "step in the plot."  *United States v. Adkinson*, 158 F.3d 1147, 1163 (11th Cir. 1998) (quoting *Schmuck v. United States*, 489 U.S. 705 (1989)); *see also*

*United States v. Jones*, 676 F. Supp. 2d 500, 515-16 (W.D. Tex. 2009) (explaining that it is use of the mail to execute the scheme, not the scheme itself, that is the offense, and dismissing mail fraud count based on innocent mailing of insurance claim).

The Second Superseding Indictment charges Anderson with *agreeing* to accept a thing of value from WorldClaim in exchange for "permitting" WorldClaim to have City business.  As pled, the alleged implied agreement was pro bono WorldClaim services in exchange for a City contract.  ECF No. 214 – Second Superseding Indictment ¶¶ 62-63, 89, 141.  Notably, the Second Superseding Indictment does *not* charge Anderson with an offense for accepting anything of value.

The apparent fruits of the charged scheme were WorldClaim's securing City business and, potentially, WorldClaim's receiving payment from the City.  *See Adkinson*, 158 F.3d at 1163 ("A mailing [wire transmission] furthers a scheme when 'the mails are used prior to, and as one step toward, the receipt of the fruits of the fraud.' " (internal citation omitted)).  The wire transmission associated with Anderson's receipt of legitimate insurance proceeds for hurricane damage sustained to her property was not in furtherance of the charged scheme.  It was neither incidental to an essential part of the charged scheme, nor a step in the plot of the charged scheme.

Therefore, Count 21 fails to state an offense and should be dismissed.

## II.     EROSION CONTROL SERVICES ("ECS")

<u>False Statements</u>

The false statements charged for Count 25 are not disproven by Anderson's alleged knowledge.[1]

A statement only violates § 1001(a)(2) if it is literally false. *See United States v. Blankenship*, 382 F.3d 1110, 1132 (11th Cir. 2004) ("For a conviction to be sustained under § 1001(a)(3), it is imperative that the 'writing or document' be 'false.'"); *see also United States v. Tantchev*, 916 F.3d 645, 651 (7th Cir. 2019) ("A statement that is literally true cannot support a conviction under § 1001(a)(2)[.]").

In *United States v. Craigue*, the indictment charged a violation of § 1001(a)(2) as follows:

> [Defendant stated] that McKenna and Erickson were not employees of the defendant or his business, specifically, when the Officer asked him whether McKenna and Erickson were employees of his company, the defendant stated, "I've always treated them—they would come and go as they please, so I would always treat them as not employees," when, in truth and in fact, as the defendant then and there knew, McKenna and Erickson were employees and not subcontractors.

*United States v. Craigue*, 539 F. Supp. 3d 245, 248 (D.N.H. 2021).   The court assumed true that the individuals were employees, determined that this truth did not

---

[1]     Anderson denies the knowledge attributed to her in Count 25 but recognizes this is not the time to dispute the allegations.

"necessarily disprove" the truth of the charged statement that defendant treated the individuals as "not employees," and dismissed the false statement charge. *Id.* at 248-49 (collecting circuit court decisions upholding "dismissal of indictments charging false statement offenses where the government alleges a falsity which fails to 'track' the statement alleged to be false").

If the statement in paragraph 145(b)[2] is accepted as true for purpose of the motion, it does not necessarily disprove the truth of the statement in paragraph 144(b)[3]. ECF No. 214 – Second Superseding Indictment ¶¶ 144, 145. The truth of these statements are not mutually exclusive. Anderson could have "interacted with David 'Mickey' White through [middleman] City Manager Michael White shortly after Hurricane Michael" but not have been "introduced to David 'Mickey' White until December 2018 or January 2019."

---

[2]   "ANDERSON interacted with David 'Mickey' White through City Manager Michael White shortly after Hurricane Michael and requested David 'Mickey' White to have ECS clean up her private residence."

[3]   "ANDERSON was first introduced to David 'Mickey' White in December 2018 or January 2019, when volunteers were used to clean up various streets designated by Lynn Haven as needing some attention and clean-up."

The same can be said that the truth of the statement in paragraph 145(a)[4] does not necessarily disprove the truth of the statement in paragraph 144(a)[5]. ECF No. 214 – Second Superseding Indictment ¶¶ 144, 145. Anderson could have known that "ECS had been contracted by Lynn Haven to conduct debris removal and repairs" but been "unaware of the role of [ECS] in the post-Hurricane Michael clean-up of Lynn Haven." Anderson is not alleged to have stated that she was unaware of ECS's contract; she is only alleged to have stated that she was unaware of ECS's "role" in a substantial post-hurricane cleanup operation. The fact that the City had a contract with ECS does not necessarily mean that ECS was performing the contracted-for work or that Anderson was aware of the work being performed by ECS. Further, the concept of ECS's "role" in a cleanup operation consisting of City staff and local and out-of-state contractors is not synonymous with a discrete task or scope of work ECS may have performed or been contracted to perform.

Therefore, Count 25 fails to state an offense and should be dismissed.

---

[4]     "ANDERSON was aware that ECS had been contracted by Lynn Haven to conduct debris removal and repairs in the City of Lynn Haven after Hurricane Michael."

[5]     "ANDERSON was unaware of the role of Erosion Control Specialists (ECS) in the post-Hurricane Michael clean-up of Lynn Haven . . . ."

Federal Funds Theft

Count 17 tracks the language of § 666(a)(1)(A) and charges all potential theories in the conjunctive but fails to allege essential facts of Anderson's knowing participation in a scheme to defraud.

The Eleventh Circuit interpreted all theories (e.g., embezzle, steal, and so forth) under § 666(a)(1)(A) as resting on a scheme to defraud and vacated a conviction based on an indictment's lacking essential facts of the charged scheme to defraud. *See United States v. Schmitz*, 634 F.3d 1247, 1261-65 (11th Cir. 2011) (analyzing sufficiency of pleading a § 666(a)(1)(A) under conjunctive theories to "embezzle, steal, obtain by fraud and without authority convert to her [defendant's] own use, and intentionally misapply" as a scheme to defraud and vacating conviction because indictment failed to contain essential facts of the scheme to defraud).

The Second Superseding Indictment differs from the *Schmitz* indictment[6] in that it alleges essential facts of a scheme to defraud but is akin to the *Schmitz* indictment in that it fails to allege essential facts that Anderson knowingly joined and participated in a scheme that encompassed the alleged cleanup of her property. *See United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000) ("[T]he indictment must state some fact specific enough to describe a particular criminal act, rather than a

---

[6]     The indictment challenged in *Schmitz* was attached to Anderson's motion to dismiss the original indictment.  ECF No. 49-1 – Anderson Motion to Dismiss.

type of crime."). For example, the factual bases for Anderson's alleged knowledge and participation are not apparent. They may be tied to countersigning checks, signing off on check registers, or something different. As pled, however, Count 17 lacks essential facts of the alleged scheme to defraud that is specific to the charge in Count 17.

Therefore, Count 17 lacks specificity and should be dismissed.

## III.   JAMES FINCH BUSINESS INTERESTS

Finch–Anderson–Barnes Conspiracy

Count 1 is duplicitous because it improperly joins two conspiracies in the same count.

A cornerstone of a single, unified conspiracy is interdependence amongst co-conspirators. *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998); *see also United States v. Perez*, 489 F.2d 51, 57 (5th Cir. 1973) ("The necessity for drawing this distinction [between single or multiple conspiracies] derives from our interest, clearly our duty, in jealously protecting those accused from the possible transference of guilt to others accused."). The fact that conspiracies share the "*same* goal" does not mean they share a "*common* goal." *United States v. Chandler*, 376 F.3d 1303, 1320 (11th Cir. 2004).

Count 1 charges Anderson with participating in a "Finch business interest" conspiracy with James Finch *and Antonius Barnes* in violation of § 1349. As pled

and after the Government's election, the charged conspiratorial agreements

encompasses (i) an alleged agreement between Finch and Barnes to influence

Barnes' performance of official acts and (ii) an alleged agreement between Finch

and Anderson to influence Anderson's performance of official acts.  ECF No. 214 –

Second Superseding Indictment ⁋ 124.  However, no allegations suggest the separate

alleged agreements shared a common goal greater than themselves.

There is no allegation that Anderson knew of the alleged Finch-Barnes

agreement.  There is no allegation that the alleged Finch–Barnes agreement was

dependent on, facilitated by, or furthered by Anderson.  The alleged goal of

influencing Barnes' performance of official acts "was an end upon itself." *Chandler*,

376 F.3d at 1321.  The same can be said of Barnes regarding the alleged Finch-

Anderson.  These alleged agreements are independent and, if anything, constitute

independent, disconnected alleged conspiracies.

Therefore, Count 1 is duplicitous and should be dismissed or, alternatively,

the Government should be compelled to elect and pursue a single alleged conspiracy.

Honest Services Wire Fraud

Counts 2 through 7 and 9 through 14 fail to identify the quid pro quo

exchange(s) required for a violation of §§ 1343 and 1346.

This is, in part but not entirely, a renewal of Anderson's argument made to

the Superseding Indictment.  ECF No. 138 – Anderson Motion to Dismiss.  In

*McDonnell v. United States*, the Supreme Court determined that honest services fraud required a quid pro quo exchange. *McDonnell v. United States*, 136 S. Ct. 2355, 2371 (2016). Although the parties agreed to apply the § 201(b) definition of bribery in *McDonnell*, Anderson has located no circuit court decision that held a non-quid pro quo exchange sufficed for honest services fraud. In *United States v. Silver*, the Second Circuit interpreted *McDonnell* to hold that the quo component required an official to identify, at the time of the quid pro quo exchange, a focused and concrete matter on which the official agreed to perform an official act. *United States v. Silver*, 948 F.3d 538, 553, 556-57 (2d Cir. 2020). In other words, §§ 1343 and 1346 do not criminalize a donor providing, or an official accepting, things of value with the open-ended intent to perform an official act on an undefined matter at some indefinite time in the future.

First, the same "Finch business interest" quo is alleged as the matter for all counts. However, a Finch business interest is not a focused and concrete "question, matter, cause, suit, proceeding or controversy" on which Anderson could agree or promise to perform an official act. The Finch business interest matter could never come before the City for a decision. Instead, it's more akin to a policy goal like "Virginia business and economic development" that the *McDonnell* Court stated could not suffice as the requisite quo. Although an official act quo is generally a question of fact, this was one of the few matters that the Supreme Court determined

could not constitute an official act quo as a matter of law. *McDonnell*, 136 S. Ct. at 2369. This alone is a basis to dismiss the counts for failure to state an offense.

Next, within the collective of Finch business interests, there are alleged matters that could potentially qualify as the requisite quo. Namely, the 17th Street ditch project, the Half-Cent Surtax project, and, to a lesser degree, City business for hurricane recovery. However, because these more focused and concrete matters span many years and were not all foreseeable at the outset of charged offenses, they cannot conceivably all be part of the same quid pro quo exchange. A single quid pro quo exchange may consist of multiple quids and quos (e.g., "this for these" or "these for these"), but all the quos encompassed by the exchange must be focused and concrete matters at that time. For example, the initial alleged quid pro quo exchange had to exist no later than the October 2017 wire transmission for Count 4 (and likely earlier) and could not have included hurricane recovery matters that did not arise until a year later from an October 2018 hurricane. Thus, imbedded in the Second Superseding Indictment are more than one alleged quid pro quo exchange, but these different exchanges, which are the heart of the offenses for honest services fraud, have not been alleged with sufficient specificity and cannot be ascertained from the Second Superseding Indictment.

Therefore, Counts 2 through 7 and 9 through 14 fail to state an offense (no focused and concrete matter), lack specificity (unidentifiable or commingled quid pro quo exchanges), and should be dismissed.

Federal Program Fraud

Count 15 fails to identify the City "business, transaction, or series of transactions" required for a violation of § 666(a)(1)(B).

There appears to be a circuit split concerning § 666(a)(1)(B)'s required nexus between an agent's prohibited receipt of a thing of value and the agent's intent to be influenced or rewarded in connection with the principal's business, transaction, or series of transactions.  The most recent decisions read the statute to require a quid pro quo exchange of *any* act, including non-official acts.  *See United States v. Hamilton*, -- F.4th --, 2022 WL 3593974, at \*3-8 (5th Cir. Aug. 23, 2022); *United States v. Lindberg*, 39 F.4th 151, 165-77 (4th Cir. 2022).  This is consistent with the Supreme Court having described § 666(a)(1)(B) with the same "in exchange for" language attributed to quid pro quo exchanges.  *Salinas v. United States*, 522 U.S. 52, 57-58 (1997) (describing § 666(a)(1)(B) in dicta as prohibiting "transfers of personal property or other valuable consideration *in exchange for* the influence of reward" (emphasis added)).  But admittedly, multiple circuits appear to have found the contrary.

The Eleventh Circuit has used the phraseology that § 666(a)(1)(B) does not require a quid pro quo exchange.  In a prior filing, Anderson took that at face value.  However, a closer reading reveals that the court had defined the term "quid pro quo" to include an official act, and the legal argument and decision turned on whether § 666(a)(1)(B) was limited to official acts.  *United States v. McNair*, 605 F.3d 1152, 1184-95 (11th Cir. 2010) (defining term "quid pro quo" to be an *official act* quid pro quo and clarifying broad use of the defined quid pro quo term by "expressly hold[ing] there is no requirement in § 666(a)(1)(B) or (a)(2) that the government allege or prove an intent that a specific payment was solicited, received, or given in exchange for a specific *official act*, termed a *quid pro quo*" and finding that "the government is not required to tie or directly link a benefit or payment to a specific *official act*" (emphasis added)).  Whether section 666(a)(1)(2) requires at least a non-official act quid pro quo appears to still be an open question and not addressed by subsequent Eleventh Circuit decisions citing *McNair*.  The analysis in *Hamilton* and *Lindberg* and the "in exchange for" reference by the Supreme Court in *Salinas* should be persuasive.

For purposes of this motion, however, the distinction should not matter.  The Supreme Court previously indicated that the official act(s) tied to a particular bribe or unlawful gratuity need be identified and proved.  Because again, receipt of a thing of value without a nexus to an official act does not violate § 201.  *United States v.*

*Sun-Diamond Growers of Cal.*, 526 U.S. 398, 406-09 (1999) ("The [§ 201's] insistence upon an 'official act,' carefully defined, seems pregnant with the requirement that some particular official act be identified and proved . . . . When, however, no particular 'official act' need be identified, and the giving of gifts by reason of the recipient's mere tenure in office constitutes a violation, nothing but the Government's discretion prevents the foregoing examples [not violations of § 201] from being prosecuted.").

Notwithstanding the nexus required by § 666(a)(1)(B), the official's intended-to-be influenced or rewarded act should be identified and pled.  Count 15 includes factual allegations that implicate potential City business items or transactions from four different categories that may or may not be a basis for Count 15.  ECF No. 214 - Second Superseding Indictment at ¶ 49 (alleging acts associated with Half-Cent Sales Tax project); ¶¶ 70, 72, 73, 75, 79 (alleging acts associated with hurricane debris disposal); ¶ 74 (alleging acts associated with 17th Street Ditch project); ¶ 82 (alleging acts associated with approval of a plat for a Finch-owned development company).[7]  Count 15 identifies the alleged thing of value receive by Anderson but fails to allege a link to an identifiable act (i.e., the business, transaction, or series of transaction).

---

[7]     These acts are limited to the one-year time period specified for Count 15.

Therefore, Count 15 fails to state an offense, lacks specificity, and should be dismissed.

Wherefore, Defendant, Margo Deal Anderson, requests that the Court:

A.      Dismiss Count 1 or, alternative, compel an election of a single conspiracy;

B.      Dismiss Counts 2 through 7, 9 through 15, 17, 21, and 25; and

C.      Such further relief as the Court deems just and proper.

Dated this 12th day of September 2022.

/s/ *Anthony L. Bajoczky, Jr.*
W. Robert Vezina, III
Florida Bar No. 329401
Anthony L. Bajoczky, Jr.
Florida Bar No. 96631
Vezina, Lawrence & Piscitelli, P.A.
413 East Park Avenue
Tallahassee, Florida 32301
850-224-6205
rvezina@vlplaw.com
tbajoczky@vlplaw.com
rhodge@vlplaw.com

Counsel for Defendant,
Margo Deal Anderson

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served electronically via the CM/ECF System on this 12th day of September 2022.

/s/ *Anthony L. Bajoczky, Jr.*